(19 App. Div. 561.)

### MITCHELL v. ROUSE.

(Supreme Court, Appellate Division, Third Department. July 6, 1897.)

1. NEW TRIAL—CONDITIONS PRECEDENT—NONSUIT.
   The making of a motion for a nonsuit is not a condition precedent to a motion made under Code Civ. Proc. § 999, for a new trial on the ground that the verdict is contrary to the evidence.

2. IMPLIED CONTRACT FOR SERVICES—EVIDENCE.
   Plaintiff sued defendant for services in assisting her to procure a settlement of a claim against a railroad for the negligent killing of her husband, to ob-

tain her appointment as administratrix, and to invest certain money. Plain-
tiff was not a lawyer, and was a relative of defendant. It appeared that after
the death of defendant's husband plaintiff told her he would gladly do any-
thing he could for her; that afterwards he went to Albany, at her request,
to negotiate with the railroad company; that he made no charge against de-
fendant, and when she collected her money received from her the amount of
his expenses, without claiming more, but borrowed $1,000 from her on his
note; that subsequently he quarreled with defendant, and after the quarrel
brought this suit for compensation for his services. The only evidence of
the value of the services was the testimony of two lawyers as to the value of
services in settling claims against railroad companies. The jury gave plaintiff
a verdict for $350. *Held*, that the verdict was against the weight of evidence,
and should be set aside.

Appeal from Saratoga county court.

Action by Albert F. Mitchell against Carrie A. Rouse. From a
judgment entered on a verdict for plaintiff in the sum of $350, and
from an order denying a motion on the minutes for a new trial, defend-
ant appeals. Reversed.

Argued before PARKER, P. J., and LANDON, HERRICK, PUT-
NAM, and MERWIN, JJ.

Lewis E. Carr, for appellant.
Edgar T. Brackett, for respondent.

MERWIN, J. The recovery in this case is for personal services
performed by the plaintiff at the request, as he claims, of the defendant
in assisting her to procure a settlement of a claim she had against
a railroad company for damages for the death of her husband, and
also in assisting her in her appointment as administratrix of her hus-
band's estate, and in investing the moneys received from the railroad
company. At the trial the plaintiff was called as a witness, and
gave a statement of what he had done, but did not state the value of
his services. A witness was then called, who testified that he lived
in Saratoga Springs, was a lawyer, had been admitted eight or nine
years, had some familiarity with the work connected with the settle-
ment of claims against railroads, had seen other claims than those
he had himself settled, had heard to some extent the prices charged
for doing that kind of work by others, and had a notion of the value
of that kind of work. A hypothetical question was then put to the
witness as to the value of the services of "a person in Saratoga Springs,
* * * a person not a lawyer," upon an assumed state of facts,
which included not only the services of such a person in settling a
railroad claim, but also in going upon the bond of the administratrix
for $6,000, and in endeavoring for a matter of three months to make
loans of the money received, and finally securing a loan of $2,500,
which the administratrix rejected. There was no evidence that the
witness knew anything about the value of the services of a person in
becoming a surety upon such a bond or in negotiating loans. The
question was objected to as incompetent; that the witness was not
shown competent to express an opinion on the value of the services
stated. The objection was overruled, and defendant excepted. The
question was asked and answered as an entirety. As to a portion
he was not shown competent to speak, and this portion, judging from

the course of the trial and the size of the verdict, was a material one. The witness was not asked the value of the services of the plaintiff. It did not appear that he was acquainted with the plaintiff. There was no other evidence of value, except an answer to the same hypothetical question put to another witness whose qualifications for answering were no better, and to which the same objection was taken and ruling made. The objection was, we think, a good one, and the exception was well taken. Both of the witnesses on the question of value testify upon their cross-examination that their knowledge as to charges for settling claims was confined to cases of charges by lawyers. So that any inference from their opinions, as well as the verdict of a jury based on them, as to the value of the services of the plaintiff, a retail grocer, would, to say the least, be somewhat speculative.

The court charged the jury that the plaintiff could not recover if the services were rendered without any expectation of being paid for. The jury, by their verdict, say there was such an expectation. The parties were relatives, on very intimate terms, and so continued up to May, 1895, when some dissatisfaction was manifested about a security, and the friendly relations terminated. All of the services in question had been rendered before this, and no charge therefor had been made by the plaintiff. He had told the defendant soon after the funeral of her husband that anything he could do for her he would be glad to do. Afterwards she asked him to go to Albany, and see what the railroad company would do, saying that: "I will pay your expenses and all trouble. * * * Now, will you do this for me? You don't know how I hate to ask it." He replied: "Of course, I will go to Albany for you, or anywhere else that I can be of service to you, 'Carrie, don't say that you hate to ask me to do for you;" and then referred to former kindness on her part. He appeared before the railroad agent as the relative and friend of defendant. After she received payment from the company, she paid the plaintiff for his expenses, and nothing was then said about any other charges. The plaintiff had $1,000 of the money, and gave the defendant his note for it. He never, in any interview with the defendant, told her that he had any charge for services, and the first time he made any such claim was through an attorney in the fall of 1895. Very evidently, up to the dispute in May, 1895, the plaintiff had no desire or expectation of pecuniary payment from the defendant. He so testifies in substance. He says he had not made up his mind to make any charge until after that time. True, the defendant had offered to pay him, but the plaintiff, by his conduct, if not by his words, had repudiated any such idea, just as a man naturally would do under such circumstances. The idea of a charge was an afterthought, and the result of the severance of their friendly relations. We are inclined to the opinion that the finding that the services were rendered with the expectation of being paid for is against the weight of evidence. It is suggested that this question cannot be raised, as no motion for a nonsuit was made. That does not seem to be a condition precedent to a motion, made under section 999 of the Code of Civil Procedure, for a new trial upon the ground that the verdict is contrary to the evidence.

Picard v. Lang, 3 App. Div. 51, 38 N. Y. Supp. 229, and cases cited. It follows that the judgment should be reversed.

Judgment and order reversed, and new trial granted, costs to abide the event. All concur, except PUTNAM, J., not acting.