(22 Misc. Rep. 429.)

### PULVER v. ESSELSTYN.

(Columbia County Court. January, 1898.)

1. LANDLORD AND TENANT—SERVICES BY TENANT.
    A tenant, who leased a farm on shares under an oral contract, to recover for services performed for the landlord, which are usually performed gratuitously, must show an express agreement to pay for them, or circumstances from which such an agreement may be inferred.

2. PAYMENT—PRESUMPTIONS.
    A payment made by a debtor to a creditor will be presumed to be in full unless the contrary appears.

3. LIMITATIONS—OPEN ACCOUNT.
    Where it is a tenant's duty, under his lease, to market the hay raised on the farm, half the proceeds of which belong to the landlord, applying the landlord's portion of the proceeds on a debt due by the landlord to the tenant, without the landlord's authority, does not make the debt a mutual, open account, so as to keep it from being barred by the statute of limitations.

4. EVIDENCE—PRESUMPTIONS.
    Where plaintiff admits having money in his hands belonging to the defendant, but fails to disclose how much, it will be presumed that he has sufficient to liquidate a balance due by defendant to him.

Appeal from justice court.

Action by George C. Pulver against John Esselstyn to recover for services rendered. From a judgment in favor of plaintiff, defendant appeals. Reversed.

John L. Crandell, for appellant.
G. K. Daley, for respondent.

LONGLEY, J. The plaintiff brought his action upon, to say the least, a very stale demand. Under an oral contract he worked the defendant's farm on shares from April, 1890, to April, 1891. In December, 1896, without, so far as the record shows, having ever made any previous demand, he sued the defendant in justice's court to recover $105.97, alleged to be due him for services outside of his contract, rendered by him to defendant during the year he worked the farm, and for certain products of the farm which he claims were had by defendant in excess of his share. He recovered a judgment for the whole amount of his claim. Upon the trial, plaintiff testified that by

his contract he was to do all the work of the farm. The services for which he now, at this late day, charges, are mainly for cleaning out the stable in which his own and defendant's horse were kept, occasionally feeding defendant's horse, milking defendant's cow sometimes when defendant was away or sick, bringing defendant's pigs, taking care of his hogs, and plowing and making his garden. I think it may fairly be held, as claimed by the defendant, that all these services the plaintiff was bound to render under his contract. But, if not, then I think he was bound to show that these small neighborly services were not intended by him, nor accepted by defendant, as mere acts of kindness, for which no charge was to be made. I think, especially in an action so long delayed, he should have shown either an express agreement by the defendant to pay for them, or some circumstance from which such an agreement might fairly be implied. I think he failed to show either. None of the services, so far as appears, were rendered upon defendant's request. The law does not imply a promise to pay for every volunteered service, even when rendered with the knowledge of the beneficiary, but will rather assume, especially as between persons sustaining towards each other such relations as existed between these parties, that such services were intended to be gratuitous. Davidson v. Gaslight Co., 99 N. Y. 558; Potter v. Carpenter, 76 N. Y. 157.

The plaintiff, in order to save a large part of his claim from the statute of limitations, sought to establish, under section 386 of the Code of Civil Procedure, a mutual, open account, with reciprocal demands, subsisting between the parties throughout the entire year, from April, 1890, to April, 1891, or at least to a period beyond December 21, 1890; the latter date being six years prior to the commencement of his action. Before the trial was commenced the plaintiff filed a bill of particulars of his claim. The bill of particulars shows nothing to defendant's credit, and nothing to indicate any mutuality of account. Nor does anything appear in the pleadings or testimony to indicate that plaintiff was indebted to defendant in any sum whatever, unless possibly for some unknown quantity of hay which plaintiff testified that he purchased of defendant some time in April, 1891, and "credited to him on account." The plaintiff did testify that during the year he was on the farm he had some things of defendant, but he does not tell what they were, nor say that he did not pay for them, or that at the time the action was brought or tried he was indebted to defendant on account of them. All that appears in the case against plaintiff's claim by way of mutuality of account is his own testimony that he was drawing hay all winter off the farm, and selling it to Bristol Bros. at $12 a ton; that he gave defendant credit for his half, but has never had any accounting or settlement with the defendant on account of the proceeds of such sales, and the hay purchased by plaintiff of defendant in April, 1891. As plaintiff's claim did not purport to be a balance of account, and as no credits appear upon the plaintiff's bill of particulars, and as he did not state any way in which he had ever otherwise credited defendant with his share of the sales of hay, or with the value of the hay purchased in

April, 1891, it is, to say the least, difficult to see how the justice could render judgment for the full amount of plaintiff's claim without allowing anything for the hay. How much money plaintiff had received for the hay was a matter peculiarly within the plaintiff's own knowledge, and unless he saw fit to disclose the amount he was owing to the defendant on account of it, or rather how much his bill was or should be reduced by the amounts he had credited to defendant on account of it, I think the presumption arises that it was enough to extinguish the whole of plaintiff's claim. A payment made by a debtor to a creditor will be presumed to be in full, unless the contrary appears. Boyd v. Weeks, 5 Hill, 395; Dock Co. v. McIntosh, Id. 290. When a party has evidence which he can produce, and fails to produce it, he must submit to the presumption that it is unfavorable to his case. In Wylde v. Railroad Co., 53 N. Y. 156, it was held that "where one party to an action, knowing the truth of a matter in controversy, and having the evidence in his possession, omits to speak, every inference warranted by the evidence offered will be indulged in against him." But it is not necessary to hold that there was a legal presumption here, binding upon the justice, which was sufficient to extinguish plaintiff's entire claim. I am quite clear that plaintiff's indebtedness to defendant for the latter's share of the proceeds of sales of hay belonging in part to defendant, as claimed by plaintiff, was not enough to impress upon plaintiff's account against defendant the character of a mutual, open, running account, within the meaning of the law, so as to enable the items of plaintiff's account which accrued within six years, if there were any, to draw after them the whole account, thus exempting the items outside of the six years from the operation of the statute of limitations. The hay sold to Bristol Bros. was not furnished by defendant to the plaintiff. The plaintiff had the right, under his contract, and it was his duty, to market the hay. That which came into his hands, therefore, belonging to the defendant, was money, and this could only enter into the account between them as a payment by defendant upon any sum which he was owing to plaintiff. This does not create a mutual account. "Payments do not enter into the account, but are at once applied to reduce it." 3 Wait, Law & Prac. 794. Of course, a payment actually made within six years by a debtor on account of an existing claim may serve to keep it alive, or even revive it if the statute has already run. But this is under another section of the Code (Code Civ. Proc. § 395), and the payment must be made by the debtor under such circumstances as evidence his intention to recognize the debt, and acknowledge a balance remaining due upon it. Crow v. Gleason (Sup.) 20 N. Y. Supp. 590; Adams v. Olin, 140 N. Y. 150, 35 N. E. 448; Crow v. Gleason, 141 N. Y. 493, 36 N. E. 497. A revival cannot be accomplished by the act of the creditor alone. Camp v. Smith (Sup.) 1 N. Y. Supp. 375. As I have said, I do not think the crediting of the proceeds of the hay by plaintiff, without any authority from defendant, as money paid by defendant on account, made a mutual, open account, with reciprocal demands between the parties. I think that all the items of plaintiff's bill of particulars which were for goods furnished or

services rendered prior to December 20, 1890, were outlawed and barred by the statute of limitations. The items of plaintiff's bill of particulars which, as therein entered, appeared to have accrued within six years prior to the commencement of the action, are thus dated:

"1891. 397 lbs. of hay out of hop house, $12 per ton, $1.19. Feb. 1. 500 lbs. of hay out of hop house, $12 per ton, $3; 7 bushels of corn out of corn house, .60, $4.20; taking care of his hogs, $5; milking his cows, $2; taking care of his horse 11½ months, $25; use of stable and wagon house, $10.

As to these seven items, the testimony shows that the stable and wagon house were reserved to the use of defendant, in the contract. He was therefore not liable for their use. The entry itself shows that the charge for taking care of defendant's horse covered the whole time plaintiff was on the farm. And the plaintiff testified that he milked the defendant's cow "through the summer." So that these items, although so entered upon the bill of particulars as to appear to have accrued subsequent to December, 1890, were in fact for services mainly, and as to the cow wholly, rendered prior to that date. But as to both these items, and also the charge of $5 for taking care of defendant's hogs, I have above expressed the opinion that plaintiff failed to show that defendant was legally indebted to him on account of either, for the reason that even if they were not included in the contract, which required the defendant to do all the work of the farm, they were not rendered upon plaintiff's request, nor under such circumstances as create an implied promise to pay for them. There remain the items of $4.19 for hay and $4.20 for corn, in all $8.39, for which at the time of the trial defendant appears to have been indebted to the plaintiff. I think it cannot be called a violent presumption to assume that if plaintiff was drawing off hay all winter, and selling it at $12 per ton, as he testifies, and has never accounted for the proceeds, he must at least be owing the defendant as much as $8.39. If this presumption does the plaintiff any injustice, he has no one but himself to blame; for he knew, or certainly should have known, how much money he had in his hands, belonging to defendant, and he cannot complain if the fact that he admitted he had some, but failed to disclose how much, is construed most strongly against him. Wylde v. Railroad Co., supra. Having shown payments upon the amount of his claim, it was his duty to show that there still remained a balance due him, and how much that balance was. Having failed to do this, there was no legal basis for a judgment in his favor. Fox v. Decker, 3 E. D. Smith, 150. I think the judgment must be reversed.

Judgment reversed, with costs.