ROBERT C. ANDERSON, Plaintiff, *v.* JOHN C. DISTLER and Others, Defendants.

Supreme Court, Trial Term, New York County, February 14, 1940.

*Earl D. Deremer*, for the plaintiff.

*Henry Ward Beer*, for the defendants.

EDER, J.  In this action the parties stipulated to waive trial by jury and also stipulated that the provisions of sections 439 and 440 of the Civil Practice Act, with respect to findings of fact and conclusions of law, be waived and that the court may render such decision as may be warranted by the facts without regard to said provisions.

Plaintiff brings this action to recover compensation for bringing to defendants a business opportunity which he contends proved profitable to them.  This business opportunity plaintiff testified consisted of communicating to defendant John C. Distler an idea or plan, the adoption of which would result in keeping in force three policies of insurance on the life of one Henry A. Wise Wood (father of defendant Elizabeth B. Distler, and father-in-law of her husband, John C. Distler), and which policies Wood stated he had decided to surrender because of his financial inability to pay any further premiums to keep them in force.

This idea or plan plaintiff contends was previously unknown to Distler and originated with him.  This idea or plan consisted merely of the suggestion that Wood authorize plaintiff to contact Distler and endeavor to persuade him to take over the payment of the premiums and thus keep the policies in force.

Wood carried and had in force five policies, all of which had been written by plaintiff, a life insurance agent.  Two of these policies aggregating $60,000 were in the State Mutual Life Insurance Company, of which company plaintiff was an agent, and three policies aggregating $150,000 were in the Union Central Life Insurance Company.  On these three latter policies Wood had borrowed to capacity, to wit, $61,000, and there remained an insignificant surrender value thereon, amounting to $595.02.  These

were the three policies which Wood had decided to surrender and which plaintiff claims were kept in force by the idea or plan which he claims he evolved and imparted to the defendant Distler and for which he claims the right to compensation.

Plaintiff testified he conceived this idea or plan on February 23, 1939, and communicated it on the following day to Distler who adopted and utilized it and paid the then due quarter-annual premiums totaling $2,219.61; that Distler, in a telephonic conversation had with plaintiff on February twenty-fourth, after stating he would consider the matter, instructed plaintiff to have drawn and sent to him an absolute form of assignment of the policies, to run to the Riggs Distler Company, with which he was connected, but that he sent him two separate sets of assignments, one absolute assignment form, whereby the proceeds would be entirely payable to the assignee; the other set was the collateral or creditor form, and thereby the assignee would only be entitled to the money advanced to pay the premiums. He did this, he said, because he did not know the form Distler wanted, although he had testified Distler had told him he wanted the absolute form; that Wood died on April 9, 1939, and that there was paid on these policies, kept in force by virtue of his idea or plan, the sum of $86,106.62.

In brief, plaintiff asserts that by disclosing to Distler his said idea or plan and persuading him to pay the mentioned premiums he thus brought him a business opportunity whereby he realized the large sum of $86,106.62 in a period of a few weeks, on an inconsequential outlay of but $2,219.61. Plaintiff further testified that the subject of his being paid any compensation therefor was not mentioned at the time, but that he is, none the less, entitled, as upon *quasi* contract, to a reasonable compensation for this service, and he seeks to recover ten per cent of the sum paid by the company on these policies, less the premium payments totaling $2,219.61, *i. e.*, on the net of $83,107.62, namely, the sum of $8,388.80, as the reasonable compensation.

Defendants on the other hand contend that the matter of keeping these policies in force was the subject of family discussion long before plaintiff spoke to Distler about it, which plaintiff says was on February 24, 1939. Plaintiff had never seen Distler previous to March 9, 1939. Distler testified he had had many discussions with his father-in-law concerning his insurance that extended back for more than ten years. He also testified, and the proof fully sustains the claims of the defense, that he was on very intimate terms with his father-in-law and between September, 1938, and up to January 10, 1939, discussed this matter of his insurance with his father-in-law and the possible lapse of the policies; that Wood told him he was in

very grave difficulty concerning this insurance, that he had borrowed practically to his capacity thereon and said that the insurances were about to lapse; that in the course of discussion Wood said to him, " I want to talk to you about it." On another occasion, prior to January 10, 1939, he said: " Now, Jack, I have got to talk to you about my insurance." Distler also testified that in December, 1938, he spoke about the policies to a Miss Fraser, Wood's secretary (and now deceased), and again in January and February, 1939; that between January tenth and January twenty-sixth he spoke to her about the Union Central policies and asked her to furnish him with a statement clearly setting forth any and all expenses involved if he undertook to carry this insurance and that he also wanted to know the family's reaction to this, and that he first desired to give every other member of the family the opportunity to take up these policies; that he inquired if Wood's brother, Otis, could carry them; that he also spoke to Wood and to Mrs. Wood about it. He further testified that Otis Wood said that he could not afford to carry the policies and that he was definitely out of the picture; that he, Distler, then instructed Miss Fraser to take the requisite steps to obtain the documents necessary for a transfer of the policies and that when the other members of the family were out of the picture he would take up the carrying of the policies; that Miss Fraser wrote him a letter dated February twenty-first (Defendants' Exhibit B) and in it furnished him the information he had requested, which letter mentions plaintiff as the insurance agent and the person she had spoken to about transferring the policies should Distler take over the carrying of the policies; that upon receipt of this letter he notified Miss Fraser he would take over the matter, to get in touch with the proper party to accomplish the transfer of the policies and that they should be assigned to the Riggs Distler Company and to have this person phone him. That the letter of February twenty-first reached him on February twenty-third and that plaintiff later phoned him; that he introduced himself as the insurance agent of Wood, stated he had been advised that he, Distler, had decided to take over the Union Central policies and wanted the policies to be assigned to the Riggs Distler Company.

Distler also testified that he had been associated with his father-in-law in a certain business enterprise and that with regard to his business affairs he was in constant contact with him, on an average of at least once a week. Distler further testified that the premiums were paid by the check of the Riggs Distler Company to whom the policies had been assigned and that when the check of the insurance company was received by it the check was returned with the request that it be made payable to Mrs. Distler directly as the company

in sending its check for the premium payments had merely acted as her agent. He also testified that neither he nor the Riggs Distler Company ever received one cent of the proceeds of these policies other than reimbursement to the Riggs Distler Company for the sum laid out by it for the premiums, and that Mrs. Distler received the remaining proceeds.

Distler further testified that throughout the course of his dealings with plaintiff, he, plaintiff, repeatedly sought to ingratiate himself with him, constantly sought to obtain his insurance, that of the Riggs Distler Company with respect to its executives and employees, and with regard to Mrs. Distler, and others, all of which I find is fully sustained by the evidence. Also that he never agreed to pay or understood or expected to pay plaintiff any compensation and that plaintiff never intimated, until some time after Wood's death, that he expected any compensation. The first time plaintiff ever mentioned compensation was on May 1, 1939, when he sent the claim papers and assignments to the Union Central Company.

In substance, the claim of the defendants is that any services rendered by plaintiff were those customarily rendered by life insurance agents without charge and without expectation of recompense and were rendered with the intent of securing other insurance business from defendants upon which plaintiff would be paid commission by the insurance companies for whom he would then be acting as agent.

The crux of plaintiff's claim to right of recovery is succinctly set forth by him in his testimony as follows: " I am claiming compensation for presenting to Mr. Distler a *wonderful opportunity*, a *business opportunity*."

Aside from any disputed questions of fact which may be involved and their ultimate disposition, we are met at the threshold with the question of whether an abstract idea may be the subject of property right and subject to disposal by contract. It is the general rule that a person has no property right in an idea which is not novel, not subject to copyright, or not patentable. Likewise, an idea which never takes concrete form at the time of disclosure, even if novel, is not the subject of a property right or of contract. (*Williamson* v. *New York Central R. R. Co.*, 258 App. Div. 226.) This does not mean to imply that there may not be property in ideas of value or even thought to be so. There may be property in an idea, trade secret or system, and they may be the subject of barter and sale. But their originator or proprietor must, by express contract, protect himself against their later use if they are not adopted or utilized by the recipient after such revelation; he cannot give them out or disclose them unreservedly and afterwards sue for a share

of the benefits which some one else may make out of their application; the originator or proprietor thereof must himself protect it from escape or disclosure. (*Bristol* v. *Equitable Life Assur. Soc.*, 132 N. Y. 264; *Williamson* v. *New York Central R. R. Co., supra; Haskins* v. *Ryan*, 75 N. J. Eq. 330, 332; 78 A. 556.) The rule is aptly set forth in the *Bristol* case (*supra*, at p. 267): " If it cannot be sold or negotiated or used without a disclosure, it would seem proper that some contract should guard or regulate the disclosure, otherwise it must follow the law of ideas and become the acquisition of whoever receives it." In a sense it becomes dedicated to public use. (*Peabody* v. *Norfolk*, 98 Mass. 452, 458.)

Plaintiff here did not plead or attempt to prove an express contract made at the time he allegedly presented his claimed idea or wonderful business opportunity to Distler and, therefore, has, for this reason, failed to prove a cause of action. Moreover, what he characterizes as a " wonderful opportunity," a " business opportunity," is more in the nature of a voluntary suggestion or valuable hint, and the adoption of it gives rise to no legal obligation. (*Bristol* v. *Equitable Life Assur. Soc., supra.*)

" Business opportunity," as generally understood, in a situation involving what is known in common parlance as furnishing a " valuable tip," is the imparting of valuable information, the employment and use of which by the recipient will result in a profit, and necessarily implies and carries with it the entering upon an enterprise, as a commercial venture.

Here, the keeping of the policies in force by the payment of the premiums involved nothing new or novel, but was a commonplace usage known to all, involving neither skill, ability, ingenuity, nor originality; it was the ordinary thing, a matter of common knowledge.

Plaintiff by merely telling Distler or suggesting to him the advisability of paying the premiums to keep the policies in force imparted to him nothing new, novel or original, but merely offered a sensible suggestion. His act in doing so was purely voluntary and made with the thought, and no doubt the hope, that the interest he displayed would be recognized and appreciated by Distler and the Wood family later turning over insurance business to him, directly and through their recommendations. But generally no recovery may be had for voluntarily giving information to another and upon which he acts merely because it results in a profit. (*Holley* v. *Townsend*, 16 How. Pr. 125; *Simon* v. *Tipton*, 21 Ky. Law Rep. 167; 50 S. W. 1106.)

Plaintiff brought Distler neither a business opportunity, nor a wonderful opportunity. In deciding that he was presenting to

Distler a wonderful business opportunity plaintiff did so in his belief that Wood would very shortly die, but this was speculative purely; Wood might have lived on and if he did so for six years the premium payments made during this period would have totaled $52,800, and had he lived eight years and the policies were carried for that period, it would have resulted in a loss, and plaintiff so testified. There was nothing wonderful about the plaintiff's suggestion to carry the policies through Distler paying the premiums, assuming his testimony to be true, nor did it constitute a business opportunity.

" The law does not imply a promise to pay for every volunteered service " (*Pulver* v. *Esselstyn*, 22 Misc. 429, 431), and the principles governing an implied contract are inapplicable here if the " services " plaintiff rendered — if they can be deemed such — were originally rendered without expectation of compensation or reward and they cannot be subsequently changed into a charge; chagrin, disappointment, vexation, or supposed ingratitude cannot be used as a subsequent basis for a claim for compensation where none was originally intended or expected. (*Fox* v. *Arctic P. M. & M. Co.*, 229 N. Y. 124, 131; *Davidson* v. *Westchester Gas-Light Co.*, 99 id. 558, 566, 567; *Mitchell* v. *Rouse*, 19 App. Div. 561; *McClure* v. *Lenz*, 40 Ind. App. 56, 59; 80 N. E. 98; *Warring* v. *Hill*, 89 Ind. 497, 500; *Silano* v. *Carosella*, 272 Mass. 203, 206; 172 N. E. 216.)

No binding promise to make compensation for personal services can be implied or inferred in favor of one person against another, unless the party furnishing the services expected or had reason to expect compensation from the other party. General assumpsit cannot be based on a service rendered through kindness or other motive and not to be accounted for on the theory of an expectation of payment. This is but the corollary of the general principle in the law of contracts that all contracts must be good or bad in their inception and must not depend on subsequent contingencies. Liability for services cannot hinge on whether the party chooses at a later date to make them a gift or a charge.

In so far as the disputed issues of fact are concerned, I unhesitatingly resolve them in favor of the defendants. The testimony and the documentary evidence fully attest the integrity of the defense. The plaintiff's claim is, I am satisfied, unwarranted, and born in the disappointment of his failure to obtain hoped-for future insurance business from the defendants and through their recommendations.

Judgment is accordingly rendered in favor of the defendants dismissing the complaint upon the merits. Thirty days' stay. Sixty days to make a case.