FLORENCE B. SYMONDS, Appellant, *v.* WILLIAM J. HURLBUT, Respondent.

First Department, February 21, 1924.

Landlord and tenant — action to restrain tenant from subletting, to cancel lease, and for damages — evidence shows that two upper floors of dwelling were sublet without landlord's consent or acquiescence, contrary to lease — landlord is entitled to cancel lease and recover rental value from date of cancellation.

In an action to restrain a tenant from subletting a portion of the demised premises, to cancel the lease and to recover damages, the evidence shows that the tenant, in violation of a lease providing that the premises should be occupied as a

private dwelling and not otherwise, and prohibiting alterations or improvements, or the subletting of the premises or any part thereof without the written consent of the landlord, sublet the two upper floors of the leased dwelling to a third person.   The contention by the tenant that the sublessee was a lodger merely is not supported by the evidence, and it appears also that the greater weight of the evidence is against the claim of waiver and acquiescence by the landlord.

The landlord was entitled, as a matter of right, to cancel the lease and to demand a surrender of the premises as soon as the tenant violated the lease, and he is entitled to recover from the tenant the fair rental value of the premises from the date of notice of election to cancel the lease and demand for the surrender of the premises to the date when the tenant ceased to occupy them.

Merrell, J., and Clarke, P. J., dissent, with opinion.

Appeal by the plaintiff, Florence B. Symonds, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of New York on the 25th day of January, 1923, upon the decision of the court rendered after a trial at the New York Special Term dismissing the complaint upon the merits.

*Isham Henderson*, for the appellant.

*Harry Saks Hechheimer*, for the respondent.

McAvoy, J.:

The action now here was brought to enjoin and restrain the defendant from permitting or suffering an alleged subtenant to occupy the premises known as 444 West Twenty-second street, New York city, or any portion thereof, and to cancel defendant's lease under which defendant occupied these premises; and judgment was asked directing defendant to deliver up the leased premises to the plaintiff, and for mesne damages.

The grounds upon which this relief was demanded are: That defendant violated the terms of the lease under which he was occupying the premises in question in that he caused certain alterations to be made in and about the demised premises; and that he subleased or underlet a portion of the premises to another.

The following clauses are those which the plaintiff contends were violated, and because of which violation she claims to be entitled to cancel the lease and to secure judgment to enjoin the defendant from violating it, and directing the person to whom the premises were sublet to cease occupying the place as an undertenant or sublessee:

" The said premises are   *   *   *   to be occupied as a private dwelling and not otherwise."

" *Fifth.* That the tenant shall neither make nor allow to be made any alterations or improvements in or upon the hereby demised premises, without a consent in writing being first had and obtained from the said landlord, agents or assigns."

" *Tenth.* That the tenant shall not  *  *  *  let or sublet the premises or any part thereof, without the written consent of the said landlord or agents."

The evidence was undisputed that one Rector occupied the two upper floors, with his family, from October, 1918, until October, 1921; that Rector paid to the defendant fifty-five per cent of the monthly expenses of running the house, as well as fifty-five dollars a month for the use of these floors; that in one of the rooms on the third floor which the Rectors used as a kitchen, defendant had installed a sink, gas range and other cooking fixtures; and that upon the front door of the premises there had been affixed an announcing bell, bearing the name " Rector," which was intended, apparently, to indicate a separate domicile on the part of the other persons occupying the dwelling.  There were, in effect, two separate and distinct apartments maintained in this house, which it had been covenanted was to be occupied as a private dwelling and not otherwise.  While there was no formal letting to the tenants on the upper floors by the defendant, the character and use of the occupation and its distinct independence from that of the lessor created an underletting which this subtenant could enforce.

It is true that both the defendant and his so-called fellow-lodgers in this dwelling contend that there was a community interest established in all the expenses of the house, and that they were merely guests lodging with the defendant and paying their share of the expenses to maintain the household.  The circumstances of the arrangement of their method of living, however, belie their claim and render it susceptible of the charge of being a mere subterfuge to defeat the express prohibition against underletting.

There is some evidence that the main kitchen of the house was sometimes used by those occupying the upper floors; but this was doubtless merely incidental to the occupation of the upper floors and does not indicate that the persons who had their own bells, their own bathrooms and their separate kitchen, were merely lodgers in whom no estate had arisen by reason of their separate occupation and the payment of a specific sum as rent.  It is obvious that whatever the tenant and under-tenant called themselves by private arrangement, their legal character was that of lessor and lessee; nor was it made clear that the landlord knew of these alterations and this method of occupancy and acquiesced in it prior to the time when she made demand for its cessation.

The record's reading demonstrates that the greater weight of the proof is against the claim of waiver and acquiescence.

That the subtenant understood that the payment made by him was in the nature of rent is apparent from his version of the relation

as it appears from the following quotation of his testimony: " Q. You paid $55 a month to Mr. Hurlbut for the use of the two upper floors of that property? A. No, it was always more than that. Q. You paid that to Mr. Hurlbut? A. Yes. Q. You did not pay it to Mrs. Symonds? A. No. * * * Q. And under that arrangement you had the right to occupy the two upper floors of the house? A. Well they were allotted to us. * * * Q. And as a matter of fact didn't you pay Mr. Hurlbut $55 a month as your share of the rent of those premises? A. Well, my impression is that that was the rate that was figured in pertaining to the rent. * * * By the Court: Q. You certainly paid 55% of the rent? A. Yes."

The testimony of the defendant as to his understanding of the arrangement which he had with another occupant prior to the one of whom complaint is made in this action, indicates his own notion of the status of his so-called lodgers. This is an excerpt: " Q. Did Mr. Austin share all the expenses? A. Yes. Q. On what basis? A. The same way he was a sub-tenant too."

The claim that the whole tenancy was reserved by the defendant as tenant of the premises and that there was no subletting seems completely overturned by the nature of this proof. The court should have found, as requested by the plaintiff, that the defendant in violation of the covenants of the lease sublet the second and third floors of the premises to Enoch Rector as subtenant. Upon such finding of the violation by the defendant of his covenant in the lease to refrain from subletting, the plaintiff was entitled as matter of right to cancel the lease and to demand surrender of the premises.

It is stated by this court in *Boskowitz* v. *Cohn* (197 App. Div. 776, 780): " Inasmuch as it was made a condition of the granting of the lease to the defendants H. & S. Cohn that they should not, without the written consent of the lessor, sublet said premises or any part thereof, the plaintiff was entirely within his rights in asking the court to grant a mandatory injunction summarily ousting the sublessees."

The fair rental value of the premises from the date of notice of election to cancel the lease and demand for the surrender of the premises, to May 23, 1922, the date when the tenant ceased occupation of the premises, was at the rate of $2,500 per annum and amounted for the full time to $3,882. This fact was found by the court without any opposing evidence, and since the evidence showed incontrovertibly that plaintiff was within her rights in canceling the lease, the tenant thereupon became à trespasser and the plaintiff is entitled to recover her damages, *i. e.*, the rental value of the premises.

The judgment should, therefore, be reversed, with costs and judgment directed for the plaintiff, with costs.

Dowling and Smith, JJ., concur; Clarke, P. J., and Merrell, J., dissent.

Merrell, J. (dissenting):

This action is brought by the plaintiff, who formerly was the owner of real property situate at 444 West Twenty-second street, in the borough of Manhattan, New York city, and who by written indenture bearing date October 14, 1916, leased said property to the defendant for residential purposes, to obtain an injunction restraining the defendant from violating the covenants contained in said written lease and in particular to restrain the defendant from permitting or suffering a subtenant to occupy said premises or any part thereof, and that said lease be canceled and the defendant required to return the possession of the demised premises to the plaintiff in as good condition as they were at the time of the execution of said lease, and that the plaintiff be awarded damages in the sum of $5,000.

The lease in question contained two covenants for the alleged violation of each of which the plaintiff complains. The 5th clause of the lease provides as follows:

" *Fifth.* That the tenant shall neither make nor allow to be made any alterations or improvements in or upon the hereby demised premises, without a consent in writing being first had and obtained from the said landlord, agents or assigns. All alterations, improvements or additional plumbing fixtures that may be made or connected in or upon or to the said premises, building or buildings, during the said term shall belong to the said landlord or assigns, and shall remain as and for a part of the premises at the expiration of said lease; but any repairs necessary to such fixtures, or to any other part of the premises, resulting from the addition of such fixtures, shall be made by the tenant at his own expense throughout the term."

The 10th clause of said lease provides as follows:

" *Tenth.* That the tenant shall not assign or mortgage this lease, or let or sublet the premises, or any part thereof, without the written consent of the said landlord, or agents, or permit or suffer the same to be used or occupied for any business, or permit or suffer upon the same any act or thing deemed extra hazardous on account of fire, under penalty of damages and forfeiture."

It is for the alleged violation of these two clauses that the plaintiff complains and asks relief against the defendant.

After hearing the testimony of the respective parties and con-

sidering briefs which were submitted, the learned court before whom the action was tried made its decision holding that plaintiff had not established any violation by the defendant of either of said covenants contained in the lease; that while there were some alterations made in the demised premises by the lessee, the defendant herein, such alterations were of a minor nature and were insufficient to violate the 5th provision of said lease above quoted. As to the alleged violation of the 10th clause the court held that the evidence did not show that the defendant had sublet said premises or any part thereof, but that at most the defendant permitted friends to share the leased premises with him, and that said friends shared the expense of the rental and household expenses with the defendant.

As to the first complaint, that there had been a violation of the 5th clause of the lease against alterations without the written consent of the plaintiff lessor, almost at the outset of the trial it was conceded by counsel for the plaintiff that the changes for which the plaintiff now complains " were not of very great consequence " and " in themselves they are very little damage." These alterations were the placing of a bath tub in one of the rooms on said premises, the installation of a sink and auxiliary gas range and an extra bell on the front door of the premises, which bell, however, was immediately removed upon plaintiff's demand. It was conceded by counsel for the plaintiff that such changes were of no consequence whatever. The appellant insists that said changes clearly point to a subletting of the premises for residential purposes. The evidence does not disclose such to be the fact, but is to the effect that the defendant and several of his friends on different occasions occupied the premises under an arrangement by which they were to pool the running expenses thereof, and that so far as the installation of the extra fixtures was concerned the evidence shows that the alleged subtenant used both ranges for cooking, the main one in the kitchen and the supplemental gas range which was installed in another room. The evidence further shows that this old house had been artistically improved by the defendant after obtaining his lease and that the plaintiff had knowledge of such changes, and that after knowledge of the changes that had been made, the plaintiff for a long period accepted the reserved rent for the premises from the defendant.

It is claimed by the plaintiff that the defendant sublet a portion of the premises to a family named Rector. The defendant took possession of the premises on November 1, 1916. The evidence shows that sometime in 1918 plaintiff's attention was called to a newspaper article to the effect that the defendant had remodeled the

premises into a studio, building a skylight and making other changes in the premises. The plaintiff's husband called up the defendant on the telephone and the evidence discloses that there was a mutual surprise at the tone of the newspaper article and the defendant promised to send his friend and attorney, a Mr. Austin, to see plaintiff's husband in regard to the matter. Plaintiff testified that she asked her husband to get in touch with the defendant, and that subsequently her husband talked with this Mr. Austin. Plaintiff admitted that after this talk in 1918 she continued to receive rent of the premises down to November, 1920. Plaintiff's husband testified that he first called the defendant upon the telephone with reference to the reported alterations that had been made in the premises as shown by the newspaper article, and that the defendant denied that any alterations had been made or that there had been any subleasing of the premises. Plaintiff's husband would not admit on cross-examination that he was " aroused," but stated that he was " interested " in the newspaper article, which was to the effect that a studio had been introduced upstairs in the building, which was the most important feature of the alteration. Plaintiff's husband admitted that the installation of the bathroom was a " small detail," and that a few days after his telephone talk with the defendant, defendant's friend and attorney, Austin, called upon plaintiff's husband and told him that the defendant occasionally had friends and relatives with him in the house, but that they never paid rent and that it was not a boarding house, nor was it sublet in any way, and that he, Austin, himself had stayed there for a week or two at a time but had never paid personally any rent.

Enoch Rector, called as a witness on behalf of the plaintiff, testified that for about three years he had resided upon these premises with the defendant who was a friend of his, and that the defendant and the witness pooled their expenses, the witness paying about fifty-five per cent of the household expenses, including rent, gas and electric light service, paying the same to the defendant. On cross-examination Rector testified that he had known the defendant for a great many years and had lived with him in the country under a similar pooling of expenses arrangement, which was agreeable to both parties; that he regarded the defendant as his friend, and that he went to the premises as such friend.

John F. Morgan, called as a witness in behalf of the plaintiff, testified that he was in the real estate business and that the fair rental value of these premises on November 4, 1920, was $2,500 per year. The rent reserved in the lease was the yearly sum of $1,200.

The plaintiff admitted that in May, 1922, she sold the premises

in question without undoing any of the alterations which had been made by the defendant, and that she received approximately about $2,000 more for the premises than she paid therefor, and that she had received a still better offer.

The defendant, a bachelor, testified that he was by profession an author and that negotiations for the lease from the plaintiff had been carried on by his friend and attorney, Austin; that he took possession of the premises in November, 1916, and for a time resided there alone; that afterwards his friend Austin occupied the premises with him and that subsequently his friend Rector joined him; that Rector was a very old friend of eight or nine years standing, and that he had established a house in the country with Rector on the same basis of pooling all expenses under which the premises of the plaintiff were occupied; that all of the expenses were divided between them; that the arrangement was " pooling all expenses, such as coal and electricity, and gas and rent and repairs and everything else that might come up that should be pooled," and that Rector paid a *pro rata* share of the household expenses.

Albert M. Austin, sworn for the defendant, testified as to the leasing of the property in defendant's behalf, and that he himself had roomed with the defendant on the property, sharing the running expenses with the defendant. Austin testified that he had a home in the country, and that he came to town in the winter, and that the defendant had asked him to occupy a room with him and that they made a perfectly friendly arrangement by which they were to share the expenses. Austin testified that his talk with plaintiff's husband was as a friend of the defendant and as his attorney. Austin testified that he called upon plaintiff's husband shortly after the publication of the newspaper article which " interested " plaintiff's husband in 1918 and was received cordially, and that he had a perfectly friendly talk lasting some time in which the newspaper article was discussed and that he explained to the husband the entire situation and as to what alterations had been made and as to the people living in the apartment beside the defendant, and explained that he himself had lived there with defendant and that defendant always had somebody with him, and that the matter had been fully explained by the witness to plaintiff's agent at the time the property was leased — just what the position and method of living was; that defendant had a housekeeper and always or usually had some friend there or relatives with him; that the whole situation was discussed in a very friendly way with plaintiff's husband, and particularly that they discussed the matter of alterations which had been made in

the house and who was there, and that the defendant usually lived with the people in the house. This talk with plaintiff's husband whom she had sent as her representative was in 1918. Thereafter, and until October, 1920, plaintiff, knowing the facts, was paid and accepted from defendant the monthly rental of the leased premises.

Enoch Rector, recalled as a witness for the plaintiff, testified that when he occupied the premises with the defendant it was under an arrangement to share the general expense, including the rent, and that as they figured it out, Rector was to pay a little more than half, or about fifty-five per cent of the expense of maintaining the house; that it was the custom of Hurlbut to leave a memorandum on the table in the hall with figures on the first of each month, and that the witness gave him a check for it; that he occupied the two upper floors in the house, and that they had the auxiliary gas stove upstairs and did a lot of cooking down in the main kitchen.

This completed the testimony, and I think therefrom the court was justified in refusing the plaintiff the relief which she sought.

While not the basis of the judgment of the court below, I think the acceptance by plaintiff of the stipulated monthly rental for two years after she knew of the alterations, and was advised of defendant's manner of living, and which indeed she knew from the time of leasing, and in particular of his sharing the apartment at times with his friends, constituted a waiver on her part of the provisions of the lease which she now claims were violated. (*Smith* v. *Rector, etc., of St. Philip's Church,* 107 N. Y. 610.)

*Smith* v. *Rector, etc., of St. Philip's Church* (*supra*) involved facts quite similar to those presented upon this appeal. The lease in that case contained a similar covenant against subletting as here. The property there leased as here was suitable for occupancy by more people than the lessee, and the latter with the knowledge of the lessor granted verbal permission to others to occupy a part of the leased premises, and for several years the lessor received from the lessee rent of the whole premises without objection. The Court of Appeals held that this was in effect a license to use and occupy the premises as an apartment house, and that the lessor was estopped from claiming a forfeiture of the lease. Judge ANDREWS, writing for a unanimous court, said (at p. 619): " * * * We are of opinion that the conduct of the defendant in receiving for a series of years without objection, the rent due on the lease, with knowledge of the actual situation, should, if necessary, be construed as a license to use and occupy the building as an apartment house, and not as a mere waiver from time to

time of a particular antecedent breach of the covenant.   *   *   *
It is consistent with the circumstances and with fair dealing to
construe the acts and silence of the defendant as an assent that
the somewhat peculiar interest created by the letting of the
apartments from time to time for brief periods, was not an under-
letting or parting with any interest in the demised premises, within
the meaning of the covenant.  The interest of an occupier of an
apartment is peculiar.  He has simply the right to occupy desig-
nated rooms during the time specified, but a destruction of the
building ends the right [citing authorities], and thereafter he would
retain no interest in the lot.  Letting rooms to lodgers is held not
to be a breach of a covenant against under-letting. [Citing
authorities.]  The plaintiff at all times occupied a part of the
premises, and the defendant had the protection which his personal
oversight would afford.  It would be inequitable to permit the
defendant to insist upon a forfeiture, when by its conduct it had
sanctioned the construction which the plaintiff had placed upon
the covenant."

In *Presby* v. *Benjamin* (169 N. Y. 377) the lessee vacated the
leased premises before the expiration of his term and placed the
porter of his store with his wife in the apartment.  The lessor
refused to permit such occupancy claiming that it was a subletting
of the leased premises in violation of the covenants of the lease.
The Court of Appeals held that there was no violation of the
covenants of the lease that the apartment was to be used as a
private dwelling only, and was not to be sublet without the land-
lord's consent, and that the evidence presented a question of fact
as to the lessee's intent to make his porter a tenant of the apart-
ment.  Judge CULLEN in the course of his opinion in that case
quoted (at p. 379) from Taylor on Landlord and Tenant (§ 172)
as follows: " By virtue of the right to exclusive occupation which
a tenant acquires by his lease he ' becomes entitled to use the
premises, in the same manner as the owner might have done,
except that he must do no act to the injury of the inheritance,' "
and commenting thereon Judge CULLEN said (at p. 380): " The
lease provides that the apartment shall be used as a private dwelling
only.  The defendant's action in no way tended to violate this
covenant.  The lease contained the further covenant that the
lessee would not assign or sublet the premises or any part thereof
without the consent of the landlord under penalty of forfeiture.  It
is first to be observed that ' such covenants are restraints which
courts do not favor.  They are construed with the utmost jealousy,
and very easy modes have always been countenanced for defeating
them.' (*Riggs* v. *Pursell*, 66 N. Y. 193; Taylor on Landlord and

Tenant, § 403; McAdam on Landlord and Tenant, § 141.)　Thus a covenant not to assign does not prevent an under-letting (*Jackson* v. *Silvernail,* 15 Johns. 278), and a covenant not to under-let the premises is not broken by a sub-lease of a part of the premises. * * * It is clear that even under a liberal construction of the covenant, to constitute a violation of this lease the defendant must have attempted to put in possession of the premises a new tenant, *not merely a new occupant.　To be a tenant a person must have some estate,* be it ever so little, such as that of a tenant at will or on sufferance.　A person may be in occupation of real property simply as a servant or *licensee* of his master. * * * There were circumstances from which the jury might have inferred that the suggestion of a caretaker was a subterfuge, and that the real intent was to make the porter a tenant of the premises.　But in this respect the evidence presented a question of fact for the jury to pass upon." (Italics are the writer's.)

The facts presented by the evidence in the case at bar were passed upon by the trial court, and were held not to show any intent to sublet.

I have purposely set forth the testimony quite at length, believing that it clearly overcomes plaintiff's contention that there was subletting of the leased premises.　Neither Rector nor any other of defendant's friends, under the arrangement under which they shared the leased premises, obtained any estate therein or right to occupy the same.　They were merely invitees of defendant. He could have ousted them at any time.　There was no term for which they could remain.　And, in turn, they could have left on a moment's notice without being beholden to defendant for any unexpired term.　There was no term.　The relation of landlord and tenant did not exist.　They were birds of passage, asked by defendant to share his apartment, and who helped pay the expense of running the entire apartment — not merely the part in which they stayed — but the whole · during their sojourn.　Under the arrangement made, the expense for coal, gas and electricity used by the alleged " subtenant " was shared by the defendant, just as the " subtenant " paid half of the gas, electricity and other expenses incurred by defendant.

It seems to me that the testimony presented at most a question of fact which has been resolved by an able and competent judge in defendant's favor.　He has decided that the alterations made by defendant were of a minor nature and that there was no subletting of the leased premises.　The evidence does not so preponderate to the contrary as to cause a reversal of the court's decision upon the facts, nor, in view of the circumstances under which this action

was brought, should we be keen to reverse the judgment of the court below. The real incentive for the present action is too plain for serious doubt. The alterations did not injure plaintiff's premises, but improved the same and increased their value. Defendant's sharing with his friends the occupancy of the premises in nowise injured plaintiff, and would never have have been seized upon as an excuse for seeking a cancellation of the lease except for the enactment of the so-called Emergency Rent Laws in 1920, and the rapid advance in rental values which had occurred subsequent to the granting of the lease to defendant. Because under existing conditions she could obtain more than double the rent reserved in the lease to defendant, and to circumvent the provisions of the Emergency Rent Laws, plaintiff sought to curtail his tenancy.

The decision and judgment below was right, and should be affirmed, with costs.

CLARKE, P. J., concurs.

Judgment reversed, with costs, and judgment directed for plaintiff, with costs. Settle order on notice.