12 N.Y.2d 339 (1963)
Dress Shirt Sales, Inc., et al., Appellants,
v.
Hotel Martinique Associates et al., Respondents, et al., Defendant.
Court of Appeals of the State of New York.
Argued January 17, 1963.
Decided March 28, 1963.
Conrad L. Teitell and Morris J. Fellner for appellants.
Philip Gelfand, Leo E. Panzirer and Milton Sanders for respondents.
Judges DYE, FULD, VAN VOORHIS and SCILEPPI concur with Judge BURKE; Chief Judge DESMOND concurs in a separate opinion in which Judge FOSTER concurs.
*341 BURKE, J.
Plaintiffs were the lessees of space in defendants' hotel under a lease prohibiting subletting without defendant lessors' written consent. The lease, executed in 1955, was for a term of 10 years with a rental of $10,000 per year for the first five and $12,000 per year for the last five. In 1959 plaintiffs vacated but continued to pay rent. Then and at all times thereafter defendants assured plaintiffs of their willingness to allow a subletting and plaintiffs displayed a "for rent" sign on the premises with defendants' consent. Three months later one Bencini approached plaintiffs with a desire to rent the premises. While defendants at first orally stated there "would be no problem", they thereafter refused to consent to the proposed sublease because the inexpensive sandwich-type restaurant contemplated by Bencini (and, for that matter, any restaurant) was not what defendants wanted in their hotel. At the same time defendants proposed a cancellation of the lease for $75,000. Defendants' representations were false in that defendants then intended to and did thereafter negotiate with Bencini to lease the same space for the same type of restaurant. Five months later plaintiffs again tried to persuade defendants to consent to the Bencini proposition and defendants again refused for the same reasons. It is alleged that, as a result of defendants' refusal and in reliance on the truthfulness of their representation that the restaurant was not wanted, plaintiffs agreed on October *342 31, 1959 to pay $30,000 for cancellation of the lease. Two weeks later defendants leased to Bencini, at a higher rent than plaintiffs were paying. Most of these facts are denied by defendants, but their point on this summary judgment motion is that, in any event, the law denies recovery.
Plaintiffs allege, in effect, two causes of action. One is an arbitrary refusal to consent to a sublease and a further breach of the alleged oral agreement to permit subleasing in general and to Bencini in particular. It is settled that, unless the lease provides that the lessor's consent shall not be unreasonably withheld, a provision against subleasing without the lessor's consent permits the lessor to refuse arbitrarily for any reason or no reason. (Symonds v. Hurlbut, 208 App. Div. 147; Arlu Associates v. Rosner, 14 A D 2d 272.) Since the lease contained a provision that no part could be changed or waived orally, the Real Property Law (§ 282, subds. 1, 3, par. [a]) clearly invalidates the fully executory oral consent to subleasing given by defendants' agent. Even if plaintiffs gave consideration by promising to do that which they would not be obligated to do anyway (act as guarantors of the proposed new tenant's performance  which is really a lesser duty than that imposed by law, i.e., remain primarily liable), the purpose of section 282 is to enable parties to protect themselves against false claims of oral change, including waiver, by providing for a writing. (See 1952 Report of N. Y. Law Rev. Comm., p. 143.) From a policy viewpoint the suggestion that defendants' permission to display a "for rent" sign is an executed waiver and advance acceptance of any new tenant has little to recommend it.
Plaintiffs' other cause of action sounds in fraud.
While defendants' actions seem to amount to a fraud on plaintiffs to the extent of $30,000, and are clearly unconscionable, we do not think plaintiffs sufficiently show how the misrepresentation concerning defendants' unwillingness to accept Bencini's restaurant resulted in damage. Misrepresentation of an existing fact (present intention to accept a restaurant) and scienter clearly appear on the record. In plaintiffs' view, the allegations could also justify a finding that reliance on the truthfulness of the representation caused plaintiffs to buy out their lease for $30,000, believing that to be the only way out of an unprofitable situation. Had it not been for the lie, plaintiffs may well have *343 out-waited defendants who were in fact anxious to fill an unsightly vacancy.
It is doubtless true that the only wrong to which plaintiffs can point, i.e., the false reason given for refusal, is of dubious independent significance over and above the real lever by which plaintiffs were induced to buy out their lease  the refusal itself. Defendants had an unqualified contractual privilege to refuse to accept Bencini and plaintiffs would have had no remedy if defendants had simply said nothing and remained adamant in refusing to accept Bencini as a sublessee until plaintiffs gave in and paid for a cancellation of the lease. Defendants' acceptance of Bencini as a new lessee immediately thereafter would be an instance of hard dealing and nothing more. Nevertheless, a fraudulent misrepresentation need not be the sole inducing cause for entering into the bargain complained of (Kley v. Healy, 127 N.Y. 555; Adams v. Gillig, 199 N.Y. 314) and plaintiffs would be entitled to a factual determination of the materiality of the representation upon which they allege reliance.
However, with respect to the final element necessary to an action for damages for fraud  damage itself  plaintiffs' action must fail. In contrast to an action for rescission, in an action for damages for fraud actual pecuniary loss must be shown. (Urtz v. New York Cent. & H. R. R. R. Co., 202 N.Y. 170.) Here, any loss must be measured by the difference between the actual value of the remainder of the term and the price plaintiffs paid for it by reason of the lessors' deceit. (Sager v. Friedman, 270 N.Y. 472; Hanlon v. Macfadden Pub., 302 N.Y. 502.) Since defendants gave up the legal right to hold plaintiffs for six years' rent and, more to the point, since plaintiffs received a release from that amount of liability, can it be said that pecuniary loss resulted? The misrepresentation possibly influenced the bargaining in that it gave a false impression of defendants' obstinacy in insisting on holding plaintiffs to their bargain; but can an element so completely within defendants' control lessen the "true" value of the consideration received by plaintiffs? In Urtz v. New York Cent. & H. R. R. R. Co. (202 N.Y. 170, supra), an action for damage for fraudulently procuring a release from tort liability, we disallowed as too speculative a recovery based on the difference between the amount given for the release and the worth of plaintiff's unresolved *344 claim as it stood when the release was given. Again, in Ritzwoller v. Lurie (225 N.Y. 464), we upheld a dismissal of a cause of action for an accounting for damages for fraudulently inducing plaintiff to abandon an allegedly profitable contract of employment for one allegedly less profitable.
We think, therefore, that this case falls within the policy of our consistent refusal to allow damages for fraud based on the loss of a contractual bargain, the extent, and, indeed, in this case, the very existence of which is completely undeterminable and speculative.
Accordingly, the judgment should be affirmed, with costs.
Chief Judge DESMOND (concurring).
I concur for affirmance but I cannot agree that these facts make out any of the elements of a cause of action in fraud. The terms of the lease gave the landlord a complete and perfect right to refuse consent to a sublease. Since the courts give relief against actionable wrongs only and not against improprieties or unsportsmanlike conduct, we simply have no function at all in the premises. If this lease had contained the familiar provision (see authorities cited in Ogden v. Riverview Holding Corp., 134 Misc. 149) that "the consent to sublet will not unreasonably or arbitrarily be withheld", then plaintiffs could try out the issue as to the reasonableness of defendants' conduct. But the provision in this lease against subletting without consent was a clearly legal term of the grant and once the lease was signed the tenant was bound by it under all circumstances. Since the landlord did not have to give any reason for refusal to consent, no legal consequences flow from any false statement as to its reason for refusal. The tenant chose, for its own purposes, to move out but it remained liable for $75,000 rent for the balance of the term. When the landlord accepted $30,000 in exchange for a release of this obligation, the tenant necessarily knew that the landlord contemplated re-renting the property and the landlord's right so to re-rent it thereafter was unconditional.
Judgment affirmed.