**200**

Birendra Mohan SHARMA, Astral Holding Corporation, Freesia Shipping Corporation, Sun Lily Maritime, Inc., Doman Tankers Inc., and Zodiac Finance Corporation, Plaintiffs,

v.

CHEMICAL BANK, Defendant.

No. 86 Civ. 3236 (LLS).

United States District Court,
S.D. New York.

Oct. 10, 1989.

Kelley Drye & Warren, New York City, for plaintiffs; Paul F. Doyle, of counsel.

Zalkin, Rodin & Goodman, New York City, for defendant; Henry Louis Goodman and Margot Schonholtz, of counsel.

### ORDER

STANTON, District Judge.

This court's Memorandum dated September 28, 1989, denying reargument, is vacated and replaced with Exhibit 1 to this order.

So ordered.

EXHIBIT 1

MEMORANDUM

Plaintiffs' motion for reargument of a portion of this court's opinion dated October 13, 1988, 699 F.Supp. 440 and for leave to amend the complaint is denied, for the following reasons.

1. The motion rests upon a misconception of the September 12, 1984 agreement ("the Agreement").

Before that Agreement was made, plaintiffs owed Chemical over $30,000,000, which Mr. Sharma had personally guaranteed. Chemical had the right to foreclose on the vessels (subject only to a stay entered by a British court, which it was appealing) and to pursue the corporate plaintiffs and Mr. Sharma for any shortfall. The Agreement dramatically altered that situation. It reduced the debt obligation to $16,500,000, released Mr. Sharma from his personal guarantee, provided that surrender of the vessels would fully discharge the debt, and granted plaintiffs 28 days to satisfy the obligation either by refinancing the debt or by surrendering the vessels. For this, plaintiffs released any claims they had against Chemical before September 12, 1984. They also agreed that they would not, without Chemical's consent, encumber the vessels with any charter for more than three months.

Plaintiffs now claim that the Agreement is rendered illusory unless construed to require Chemical to exercise good faith in approving or disapproving longer charters. They argue that the parties knew that refinancing was impossible without first obtaining such charters, so that if Chemical could unreasonably withhold consent it could at will annul the portion of the Agreement which provided for refinancing.

That argument loses sight of the larger function of the Agreement. When Chemical postponed collection of its debt, it was entitled to the highest degree of security it could obtain in the interim. As well as substantially reducing the amount of the debt and releasing Mr. Sharma's guarantee, Chemical left the vessels under plaintiffs' operation for the next month (ultimately extended to some seven months). It was entitled to assurance that they would not be transferred or subjected to long charters which would impair Chemical's right to their possession at the end of the extension. That clause supported and effectuated the business purpose of the Agreement, and the court should be reluctant to impose upon it qualifications or limitations which the parties did not express. Against the general notion that every clause should be subject to reasonableness in its exercise, there stands the stubborn fact that practical men of affairs, including creditors who have suffered delays in payment, may legitimately provide for the possibility of an act of grace, but not wish their decision whether to grant it to be subject to a stranger's standard of reasonableness.

There is nothing ambiguous in the words used. The question is whether an additional element should be imposed, requiring the creditor to be "reasonable" in deciding when to forego its rights and allow its security to be encumbered or transferred. For the reasons stated above, it should not.

In *Dress Shirt Sales, Inc. v. Hotel Martinique Associates*, 12 N.Y.2d 339, 239 N.Y.S.2d 660, 190 N.E.2d 10 (1963) a lease required the landlords' consent to subleases. Orally, the landlords had assured the tenant they would be reasonable in giving approvals. They, in bad faith, refused to approve a sublease to a restaurant, thus compelling the main tenant to pay $30,000 to cancel the lease—and they then leased the premises to the restaurant themselves, at a higher rent. Despite this unconscionable behavior, summary judgment for defendants was affirmed. Chief Judge Desmond, concurring at 12 N.Y.2d 344, 239 N.Y.S.2d at 664, 190 N.E.2d at 13, stated:

> The terms of the lease gave the landlord a complete and perfect right to refuse consent to a sublease. Since the courts give relief against actionable wrongs only and not against improprieties or unsportsmanlike conduct, we simply have no function at all in the premises. If this lease had contained the familiar provision (see authorities cited in *Ogden v. River-*

*view Holding Corp.,* 134 Misc. 149, 234 N.Y.S. 678) that "the consent to sublet will not unreasonably or arbitrarily be withheld", then plaintiffs could try out the issue as to the reasonableness of defendants' conduct. But the provision in this lease against subletting without consent was a clearly legal term of the grant and once the lease was signed the tenant was bound by it under all circumstances. Since the landlord did not have to give any reason for refusal to consent, no legal consequences flow from any false statement as to its reason for refusal.

*See also Mann Theatres Corp. v. Mid–Island Shopping Plaza Co.,* 94 A.D.2d 466, 464 N.Y.S.2d 793, 797 (2d Dep't 1983), *aff'd mem.,* 62 N.Y.2d 930, 479 N.Y.S.2d 213, 468 N.E.2d 51 (1984).

Plaintiffs seek to distinguish these cases, saying that arbitrary refusal of the sublease did not destroy the main purpose of the lease, i.e., possession of the premises by the lessee. They argue that allowing arbitrary refusal here does destroy their opportunity to refinance. Even so, the clause as written serves the larger contractual purpose of providing an extension for the debtor and security for the creditor. It should not be judicially altered to require the creditor to be "reasonable" in foregoing its rights.

The New York Court of Appeals in *Collard v. Incorporated Village of Flower Hill,* 52 N.Y.2d 594, 603–4, 439 N.Y.S.2d 326, 331, 421 N.E.2d 818, 823 (1981) stated:

The focus of appellants' assault is the provision of the declaration of covenants that no structure may be extended or enlarged "without the prior consent of the Board of Trustees of the Village". Appellants would have us import the added substantive prescription—"which consent may not be unreasonably withheld". Their argument proceeds along two paths: first, that as a matter of construction the added prescription should be read into the provision; second, that because of limitations associated with the exercise of municipal zoning power the village board would have been required to include such a prescription.

Appellants' construction argument must fail. The terminology employed in the declaration is explicit. The concept that appellants would invoke is not obscure and language to give it effect was readily available had it been the intention of the parties to include this added stipulation. Appellants point to no canon of construction in the law of real property or of contracts which would call for judicial insertion of the missing clause. Where language has been chosen containing no inherent ambiguity or uncertainty, courts are properly hesitant, under the guise of judicial construction, to imply additional requirements to relieve a party from asserted disadvantage flowing from the terms actually used (cf. *Dress Shirt Sales v. Martinque Assoc.,* 12 N.Y.2d 339, 239 N.Y.S.2d 660, 190 N.E.2d 10).

■ 2. English law does not appear to be to the contrary. It disclaims a general rule respecting the implication of requirements that consent not be unreasonably withheld, and looks to the particular case to see whether the term is necessary in order to give the contract "business efficacy." See the discussion by the Court of Appeal, per Lord Justice Slade, in *Cryer v. Scott Brothers (Sunbury) Ltd.,* 55 P. & C.R. 183 (1986). Here, as stated above, implication of a reasonableness requirement is not necessary to give the Agreement business efficacy.

■ 3. The merger clauses covering the Agreement and its amendments, contained in each of the Agreement's extensions, bar plaintiffs' arguments based upon a prior course of dealing. *See Katz v. American Technical Industries, Inc.,* 96 A.D.2d 932, 466 N.Y.S.2d 378, 380 (1983) citing *Fogelson v. Rackfay Construction Co.,* 300 N.Y. 334, 340, 90 N.E.2d 881 (1950) ("The parole evidence rule prohibits the introduction of evidence outside a written agreement for the purpose of varying or adding to such an agreement, especially when, as here, the written agreement includes a merger clause.")

4. Both parties are sophisticated, and were represented by counsel in negotiating the Agreement. A provision that consent cannot unreasonably be withheld is part of the working tools of every lawyer. Had the parties intended to restrict Chemical's right to withhold approval of charters, they could easily have done so.[1]

5. The motion to reargue is untimely. While the court's Civil Rule 3(j) requires that such motions be made within ten days of the original decision, this motion was not made for almost a year. Further, it is made very close to trial, which is scheduled for October 16, 1989.

6. The balance of plaintiffs' motion for leave to amend their complaint (other than to state the breach of contract claim, if reargument had been granted) in plaintiffs' words (Memorandum, pp. 45–6): "merely restates the historical account of the events leading up to plaintiffs' claims for damages in Counts 1 through IV which, except for some elaboration of the facts and stylistic changes, remain virtually the same." This close to trial, the court will not exercise its discretion to allow service of a fifth amended complaint, merely to elaborate the facts and make stylistic changes.

So ordered.

---

1. *See Rowe v. Great Atlantic & Pacific Tea Co.,* 46 N.Y.2d 62, 72, 412 N.Y.S.2d 827, 833, 385 N.E.2d 566, 571 (1979) ("Petitioner is an experienced attorney and businessman knowledgeable in real estate transactions. A & P is, of course, a national firm presumably represented by capable agents. The negotiations which resulted in the new lease were long and exhaustive, dealing with a variety of topics, and the lease itself is obviously the result of a process of give and take. Although A & P might well have agreed to include a provision limiting its right to assign the lease had petitioner insisted upon such a clause, we may safely assume that petitioner would have had to pay a price for that concession. In these circumstances, the courts should be extremely reluctant to interpret an agreement as impliedly stating something which the parties have neglected to specifically include. As we have previously declared in a similar context, 'such lack of foresight does not create rights or obligations' (*Mutual Life Ins. Co. of N.Y. v. Tailored Woman,* 309 NY 248, 253 [128 N.E.2d 401] ).")